Filed 5/10/22  P. v. Dominguez CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>RAMON DOMINGUEZ,<br><br>    Defendant and Appellant. | A164255<br><br>(Kern County<br>Super. Ct. No. BF171145A) |

Ramon Dominguez appeals from convictions of robbery in an inhabited dwelling, resisting an executive officer, and assault by force likely to produce great bodily injury entered upon his plea of no contest.  He contends his plea was involuntary because his attorney falsely advised he was facing a life sentence, and the trial court abused its discretion in denying his request to withdraw the plea and failing to appoint substitute counsel.  He also maintains two assessments and a restitution fine imposed at sentencing must be stayed pending an ability to pay hearing.  Finally, he contends a remand is required due to statutory amendments affecting trial courts' sentencing discretion that became effective during the pendency of this appeal.  We find his arguments without merit and affirm the judgment.

**BACKGROUND**

Shortly before 5:20 p.m. on February 4, 2018, Jesse A. was removing items from the open trunk of his vehicle, which was parked in front of his

1

girlfriend's father's residence. Feeling someone behind him, he turned and saw two males about two feet away from him. Jesse A. had previously noticed the two working on a gray Toyota Highlander that was parked about 15 yards behind him with its hood up. One, subsequently identified as Dominguez, asked Jesse A. if he had a cell phone and, before Jesse A. could respond, took a step closer and said, "Don't say anything. I'll shoot you in the head." Dominguez's hands were tucked in his waistband and he told Jesse A. he had a firearm. As Dominguez asked Jesse A. where he was from, the other person removed an eight-inch knife from his waistband and pressed it against Jesse A.'s stomach. Dominguez snatched Jesse A.'s cell phone from his hand, then told Jesse A. to give him the keys Jesse A. had on his belt loop while simultaneously attempting to rip them off.

Afraid he was going to be killed or seriously injured, Jesse A. ran toward the residence, noticing Dominguez running behind and close to catching him. Jesse A. ran inside and toward the back of the residence, yelling for help. He saw Dominguez enter the residence, but lost sight of him as he entered a room. Jesse A.'s girlfriend's father was able to scare Dominguez out of the house with a shotgun. Jesse A. looked outside and saw Dominguez and the other male at their vehicle, where they were met by a female. The three fled on foot, returned a few minutes later and appeared to be trying to push the car, which would not start, then fled again on foot. When police officers arrived a few minutes later, the Highlander was still parked to the south of Jesse A.'s residence. While the officers were still at the scene, Dominguez returned to the Highlander. He ran when confronted by officers; they chased him, tackled him and, over considerable physical resistance, eventually took him into custody. Once handcuffed and walking to the patrol vehicle, Dominguez said he "didn't know what this was about,"

2

"he was there to pick up Martha's vehicle," and "he didn't know anything about the robbery." The officer had not mentioned a robbery.

Video surveillance at the residence showed Dominguez corner Jesse A. at the vehicle and then chase him into the residence.

An amended information filed on July 16, 2018, charged Dominguez with seven felony offenses: Robbery perpetrated in an inhabited dwelling (Pen. Code, § 213, subd. (a)(1)(A))[1]; robbery (§ 212.5, subd. (c)); burglary of an inhabited dwelling (§ 460, subd. (a)); attempt to take a motor vehicle by force or fear (§§ 664/215, subd. (a)); criminal threats (§ 422); and two counts of resisting an executive officer by force or violence (§ 69). It was alleged that each of the first five counts were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)), and that the first was committed in concert with two or more other people (§ 213, subd. (a)(1)(A).)

Jury trial began with in limine motions and jury selection on February 24, 2020. On February 25, the trial court granted the prosecutor's motion to dismiss the gang enhancements for insufficient evidence.

The following day, Dominguez entered a plea of no contest to robbery of an inhabited dwelling as alleged in count 1; both charges of resisting an executive officer as alleged in counts 6 and 7; and a newly added count 8, assault by force likely to produce great bodily injury (§ 245, subd. (a)(4)). It was agreed that Dominguez would be sentenced to the upper term of nine years on count 1, a consecutive one-third middle term of one year on count 8, and concurrent terms on counts 6 and 7. When asked if he concurred in the prosecutor's recitation of the terms of the negotiated plea, defense counsel stated, "It is with the following add-on. This is with a one-strike plea and it

---

[1] Further undesignated statutory references are to the Penal Code.

3

traded two other strikes for it. So it avoids a conviction potential of three strikes. The new count swaps out for a 460(a) and a 422." Dominguez agreed this was his understanding.

The felony advisement of rights, waiver and plea form Dominguez signed included statements that he was entering the plea freely and voluntarily, without fear or threat to him or anyone closely related to him, and that he had had enough time to speak with his attorney regarding the strengths of the case against him, possible defenses, and possible consequences of entering the plea. Dominguez told the court he read the form, discussed it with counsel and understood it; initialed each of the paragraphs, indicating he understood each of them; signed the form; and had no questions about the form or the plea agreement. The trial court accepted his pleas and granted the prosecutor's motion to dismiss the remaining counts.

On May 19, 2020, defense counsel informed the court that Dominguez wished to withdraw his plea, although counsel did not agree with this decision. During the ensuing discussion, Dominguez said he had felt "intimidated" to take the plea agreement, which prompted the court to hold a *Marsden*[2] hearing. After hearing from Dominguez and defense counsel, the court concluded there was no conflict and no ineffective assistance of counsel, and proceeded to sentence Dominguez to a 10-year prison term in accordance with the plea agreement. Dominguez was ordered to pay various fees including a $300 restitution fine (§ 1202.4), a total court operations assessment of $160 ($40 per conviction) (§ 1465.8), and a total court facilities assessment of $120 ($30 per conviction) (Gov. Code, § 70373). The court

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

4

stated it believed these fees to be "mandatory regardless of any indigency or ability to pay."

On June 2, 2020, Dominguez filed a notice of appeal and a request for a certificate of probable cause, which the trial court granted the same day.

## DISCUSSION

### I.

Dominguez challenges the trial court's denial of his motion to withdraw his plea in several related arguments, all based on the premise that he accepted the plea agreement as a result of defense counsel threatening he would receive a life sentence if he did not, when in fact he was not facing a life sentence because the gang allegations had been dismissed. Section 186.22, subdivision (b), requires additional terms of punishment for offenses committed for the benefit of, at the direction of, or in association with a criminal street gang; for a conviction of home invasion robbery, a gang enhancement results in an indeterminate term of 15 years to life. (§ 186.22, subd. (b)(4)(B).) Without the gang enhancements, none of the charges Dominguez faced carried a potential life sentence. Additionally, Dominguez maintains the robbery, criminal threat, and burglary charges were unlikely to result in increased punishment because they were part of a course of conduct constituting "an indivisible transaction violating more than a single statute" and committed "incident to one objective." (*People v. Martin* (2005) 133 Cal.App.4th 776, 781; § 654.)

### A.

When defense counsel told the court Dominguez wanted to withdraw his pleas, counsel explained, "Your Honor, I think I know what Mr. Dominguez's issue is. This trial began as extraordinarily serious with gangs. Mr. Dominguez's record is colorful. It's an older record but it's

5

colorful and that colorfulness translates into life. The gravamen of this case is essentially home invasion and there's a gang specter lying over it. We were successful in getting rid of the gang specter. . . . [¶] So it becomes a home invasion. And some of that home invasion was on video so it becomes less of what Mr. Dominguez says versus what the victim says. There's a video. Mr. Dominguez agreed to the ten years based on the risk I advised him to. I think now Mr. Dominguez has had a change of heart and wishes to try the home invasion, not realizing in my opinion—and this is no reflection on Your Honor, I don't think any judge would give him a *Romero*[3] break on a home invasion case if he was convicted. Because home invasion is not stealing Twinkies. [¶] So I think if he was convicted of any portion of the major felonies in this case, regardless of the gang, a Kern County Superior Court Judge would likely—to use the jail term, "light him up." That's where we are. I think Mr. Dominguez should be sentenced to the ten years, but if the court finds he needs another attorney, I'm fine with that and I will fully cooperate.

The prosecutor responded that he did not believe Dominguez had a prior strike offense, and explained that after dismissal of the gang allegations made it "a determinate case," the prosecution offered Dominguez a plea agreement "under the changed circumstances" and gave Dominguez the evening to think about it; Dominguez entered his pleas the next day.

Asked if he wished to address the court, Dominguez said he wanted to withdraw his pleas because he felt "intimidated" to accept the plea agreement. At this point, the court conducted the *Marsden* hearing, explaining to Dominguez that if he was saying he was intimidated by his attorney, this could be a basis for having a new attorney appointed to represent him. Dominguez said he was intimidated by the presence of two

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

6

police officers in the courtroom where he was discussing the plea agreement with defense counsel. Dominguez said, "So when I was there talking to my lawyer, Mr. Cadman, I felt intimidated. And I even told Mr. Cadman I didn't want to. But then he was talking to me, no, you got to or else you'll get life." Dominguez could not come to a decision and "[t]hey told me come back the next day and I told him I didn't want it, but like I just felt intimidated." Dominguez also said defense counsel's advice to take the plea contradicted the same attorney's earlier advice not to take a 10-year plea.

The court asked, "So it wasn't Mr. Cadman that was intimidating you. It was the presence of these witnesses who were law enforcement people that have been involved in the investigation?" Dominguez replied, "Yes. They were sitting there. They were witnesses. . . . And I just felt intimidated and then my lawyer was like, you got to take it." After thinking about it overnight, Dominguez told his attorney he did not want to take the plea agreement, but his attorney told him to take it. The court asked, "Did he tell you anything else other than he thought it was a good deal for you to take the plea?" and Dominguez said, "If I don't take it, I'll get life."

Defense counsel told the court he had not liked the 10-year deal until he found out the victim was going to cooperate with the prosecution. If the victim "didn't testify as to the home invasion, the case became possibly a trespass," but when counsel saw he was ready to testify, "[t]hat worried me that Mr. Dominguez was going to earn a life sentence. . . . So that's where this was. The bottom dropped out of this case when we were successful on the gang, but home invasion has no jury appeal, Judge, and I tried to explain that to Mr. Dominguez. It's one thing if you break into somebody's house and take their tools. It's another thing if you enter their house with women and children and other people present. And, I mean, in this case Mr. Dominguez

7

is very important he wasn't injured.  This homeowner came running out with guns.  [¶] So that's where we are.  I will support this defendant in whatever he wants to do, but I think the ten years [is] in his best interest.]

The court then ruled that the negotiated disposition appeared appropriate and there was no ineffective assistance of counsel, stating it thought defense counsel's analysis of the case was correct."

**B.**

Dominguez contends his plea was involuntary because, at the time he entered it, he was falsely threatened with a life sentence.

" 'Section 1018 provides that . . . "[o]n application of the defendant at any time before judgment . . . the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."  Good cause must be shown for such a withdrawal, based on clear and convincing evidence.  [Citation.]' (*People v. Mickens* (1995) 38 Cal.App.4th 1557, 1561; see also *People v. Hunt* (1985) 174 Cal.App.3d 95, 102–103.)  'To establish good cause, it must be shown that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment.  [Citations.]  Other factors overcoming defendant's free judgment include inadvertence, fraud or duress.  [Citations.]' (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.)  'The burden is on the defendant to present clear and convincing evidence the ends of justice would be subserved by permitting a change of plea to not guilty.' (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.)" (*People v. Weaver* (2004) 118 Cal.App.4th 131, 145–146.)

" 'Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.' " (*People v. Weaver*, *supra*, 118 Cal.App.4th at p. 146, quoting *People v. Hunt*, *supra*, 174 Cal.App.3d at

8

p. 103.) "A plea may not be withdrawn simply because a defendant has changed his or her mind." (*People v. Dillard* (2017) 8 Cal.App.5th 657, 665.)

A decision to deny a motion to withdraw a guilty plea " 'rests in the sound discretion of the trial court' " and is final unless the defendant can show a clear abuse of that discretion. (*In re Brown* (1973) 9 Cal.3d 679, 685, quoting *People v. Francis* (1954) 42 Cal.2d 335, 338.) "Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) "We will defer to a trial court's credibility determinations that are supported by substantial evidence." (*People v. Dillard*, *supra*, 8 Cal.App.5th at p. 665.)

Dominguez relies upon *People v. Johnson* (1995) 36 Cal.App.4th 1351, in which the defendant pled no contest pursuant to a plea bargain specifying a 20-year sentence. (*Id.* at p. 1354.) His attorney had advised him he faced a maximum of 38.8 years, but in fact the maximum was 27 years. (*Johnson*, at p. 1355.) *Johnson* held the 11-year calculation error led the defendant to believe the plea bargaining was shortening his potential sentence by 18 years rather than at most seven, constituting a " 'serious misapprehension of the penal consequences' of his plea." (*Id.* at p. 1357, quoting *People v. McCary* (1985) 166 Cal.App.3d 1, 10.)

In the present case, the record does not establish that defense counsel advised Dominguez he faced a life term if he did not accept the plea agreement. Dominguez claims defense counsel acknowledged having so advised him when counsel told the court, "This trial began as extraordinarily serious with gangs. Mr. Dominguez's record is colorful. It's an older record but it's colorful and that colorfulness translates into life."

When this portion of defense counsel's comments is read in context, however, it becomes clear that counsel's reference to a life term was in

9

connection with the case *before* the gang enhancements were dropped, not after. As set forth above, counsel went on to say, "The gravamen of this case is essentially home invasion and there's a gang specter lying over it. We were successful in getting rid of the gang specter. . . . [¶] So it becomes a home invasion. And some of that home invasion was on video so it becomes less of what Mr. Dominguez says versus what the victim says. There's a video. Mr. Dominguez agreed to the ten years based on the risk I advised him to. I think now Mr. Dominguez has had a change of heart and wishes to try the home invasion."

Taken as a whole, defense counsel's remarks described the background of the case—with the "colorfulness" counsel said "translates into life" relating to the "gang specter" that was removed when the gang enhancements were dismissed—and explained that Dominguez accepted the plea agreement because of the risk he faced going to trial on a home invasion robbery charge supported by video evidence, along with other major felonies.

Dominguez insists that he did not know he was not facing a life sentence at the time he entered his plea and that nothing in the discussions on the record makes it clear he ever realized he was not. Considering defense counsel's explanation, as well as the prosecutor's statement that Dominguez was offered a plea agreement because of the "changed circumstances" when the gang allegations were dismissed, it is difficult to imagine Dominguez was not informed that dismissal of those allegations removed the possibility of a life sentence. More to the point, the trial court heard Dominguez's claims that defense counsel told him he was facing a life term and chose to accept defense counsel's explanation and analysis of the case. We defer to the trial court's credibility determinations. (*People v. Dillard*, *supra*, 8 Cal.App.5th at

10

p. 665; see *In re Avena* (1996) 12 Cal.4th 694, 710 [deference derives from fact that trier of fact had opportunity to observe demeanor of witnesses].)

Dominguez also argues his attorney falsely led him to believe he faced a second strike sentence[4] when in fact he had no prior strike, pointing to defense counsel's comment, "I don't think any judge would give him a *Romero* break on a home invasion case if he was convicted." Again, however, context supports a different interpretation. Having just explained that the case remained serious after dismissal of the gang enhancements because of the home invasion aspect, which was captured on video, defense counsel said he thought Dominguez had changed his mind and now wanted to go to trial. Counsel referred to *Romero* in stating that he thought Dominguez did not realize that if convicted at trial he would have a strike conviction that, due to the nature of the offense, no judge would be likely to dismiss on a *Romero* motion, as well as potential additional strike convictions. Dominguez was charged with five strike offenses. If convicted at trial, even if sentence on some of the offenses was stayed pursuant to section 654 as he suggests, they would remain separate strike convictions available for sentence enhancement in a future prosecution. (*People v. Benson* (1998) 18 Cal.4th 24, 28–31; *People v. Vargas* (2014) 59 Cal.4th 635, 638.) By contrast, the plea agreement limited Dominguez to one strike. Defense counsel made this point clear in advising the court, at the time Dominguez entered his plea, that it was "a one-strike plea and it traded two other strikes for it. So it avoids a conviction potential of three strikes. The new count swaps out for a 460(a) and a 422."

_____

[4] "If a defendant has one prior serious or violent felony conviction as defined in subdivision (b) that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction." (§ 1170.12, subd. (c)(1); § 667, subd. (e)(1).)

11

In other words, defense counsel was addressing the potential for strike convictions arising from the present case, not the effect of a prior conviction on sentencing in this case.

Dominguez stated at the time of his plea that he understood the plea agreement as defense counsel explained it. With no prior conviction allegations in the information, there would have been no reason for defense counsel to suggest Dominguez faced a second strike sentence, and Dominguez never suggested in the trial court that defense counsel had done so. His complaint, both in open court and at the *Marsden* hearing, was that defense counsel told him he faced a life sentence.

Dominguez has not demonstrated that the trial court abused its discretion in rejecting his request to withdraw his plea.

## C.

Dominguez's other challenges to the denial of his motion to withdraw his plea are variations on the same theme.

First, he contends his attorney rendered ineffective assistance of counsel by falsely advising him he faced a life sentence. As just discussed, Dominguez's assertion that defense counsel continued to tell him (or allowed him to believe) he faced a life term even after the gang enhancements were dismissed was contradicted by defense counsel's explanation, and the court accepted the latter.

" ' "To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. [Citation.] 'A reasonable probability is a probability sufficient

12

to undermine confidence in the outcome.' (*Strickland v. Washington* [(1984)] 466 U.S. 668, 694.)" ' " (*People v. Rices* (2017) 4 Cal.5th 49, 80, quoting *People v. Riel* (2000) 22 Cal.4th 1153, 1175.)

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " (*Hill v. Lockhart* (1985) 474 U.S. 52, 56; quoting *McMann v. Richardson* (1970) 397 U.S. 759, 771.) In the context of guilty pleas, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (*Hill*, at p. 58.)

" ' "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." ' ([*People v.*] *Jones* [(2010)] 186 Cal.App.4th [216,] 235, citing *Strickland v. Washington*, *supra*, 466 U.S. at p. 698.) Therefore, as to both performance and prejudice, we owe the trial court no deference. 'As to those issues, the trial judge's findings are 'not binding on this court, and we may reach a different conclusion on an independent examination of the evidence produced at the hearing he conducts even where the evidence is conflicting. [Citation.]' " ' (*Jones*, at p. 236.)" (*People v. O'Hearn* (2020) 57 Cal.App.5th 280, 295.) The trial court's factual findings are entitled to deference if they are supported by " 'substantial and credible evidence.' " (*Jones*, at p. 236.)

The trial court held a *Marsden* hearing in response to Dominguez's statement that he felt "intimidated" to take the plea. During that hearing, Dominguez stated that he felt intimidated by the presence of the police officers in the room where he was discussing the plea with his attorney and

13

that the attorney told him he was going to "get life" if he did not accept the proposed plea agreement. After hearing defense counsel's explanation (discussed above), the court stated it agreed with counsel's analysis of the case, the negotiated disposition appeared to be appropriate, and there was no ineffective assistance of counsel. The court viewed the "gravamen" of Dominguez's complaint as the presence of the officers and noted that Dominguez's family was also in the room when he was discussing the plea with counsel, the court and bailiff having accommodated a request to allow them to be present.

Dominguez has presented nothing on this appeal that would enable us to reach a different conclusion. Dominguez's insistence that he entered his plea because he feared a life sentence does not establish that his fear was due to counsel falsely telling him he continued to face a life sentence after the gang enhancements were dismissed. "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Here, defense counsel's remarks at the *Marsden* hearing explained his assessment of the case after dismissal of the gang enhancements and reasons he believed the plea agreement was in Dominguez's best interests. His explanation was inconsistent with Dominguez's claim that counsel told him he continued to face a life term or failed to tell him he did not.

Dominguez next argues the trial court abused its discretion in denying his request to withdraw his plea in the face of defense counsel telling the

14

court Dominguez faced a life sentence and implying he faced a second strike sentence when in fact Dominguez did not face either of these possibilities. As explained above, Dominguez's interpretation of counsel's statements is not supported when the remarks Dominguez relies upon are read in context. The trial court denied Dominguez's request to withdraw his plea because it accepted counsel's representations as to why he advised Dominguez to accept the plea and agreed the negotiated disposition was appropriate. Dominguez has not provided us any basis to find an abuse of discretion.

Finally, Dominguez contends the trial court abused its discretion in failing to appoint substitute counsel in light of defense counsel's "affirmative misadvisements" about the sentence Dominguez faced at the time of his plea. Having concluded the record does not demonstrate the erroneous advice upon which Dominguez's claim is premised, we find no abuse of discretion.

## II.

Dominguez contends the trial court's orders that he pay a total court operations assessment of $160 ($40 per conviction) (§ 1465.8), a total court facilities assessment of $120 ($30 per conviction) (Gov. Code, § 70373), and a $300 restitution fine (§ 1202.4) must be stayed pending an ability to pay hearing. Relying upon *People v. Dueñas* (2019) 30 Cal.App.5th 1157, he maintains that court operations and facilities assessments may not be imposed without a determination of ability to pay because it is fundamentally unfair to impose such non-punitive fees on a defendant who cannot afford to pay them. He argues imposition of the restitution fine without a determination of ability to pay violates the Eighth Amendment prohibition against excessive fees and violates the constitutional guarantee of equal protection.

15

Dominguez did not object to the imposition of the assessments and fine or request an ability to pay hearing in the trial court. His failure to do so forfeited his challenge to them. (*People v. Trujillo* (2015) 60 Cal.4th 850, 859 [probation supervision and presentence investigation fees imposed under § 1203.1b]; *People v. Aguilar* (2015) 60 Cal.4th 862, 864 [probation fees under § 1203.1b, reimbursement of appointed counsel under § 987.8]; *People v. McCullough* (2013) 56 Cal.4th 589, 590 [jail booking fee under Gov. Code, § 29550.2, subd. (a)].)[5]

As our Supreme Court has explained, " ' " 'a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " ' (*In re Sheena K.* (2007) 40 Cal.4th 875, 880–881 . . . .) 'Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal.' (*Sheena K.*, at p. 880.) ' "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]" ' (*Id.* at p. 881.) Additionally, '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' (*People v. Vera* (1997) 15 Cal.4th 269, 276.)" (*People v. McCullough*, *supra*, 56 Cal.4th at p. 593.) While application of the forfeiture rule is not automatic, the "goals advanced by judicial forfeiture" clearly apply to the essentially factual question of ability to pay. (*Id.* at p. 599.)

---

[5] The fee statutes at issue in the cited cases were recently repealed, as of July 1, 2021, by Assembly Bill No. 1869 (2019–2020 Reg. Sess.). (Stats. 2020, ch. 92, §§ 25, 37, 47.)

16

Recognizing we might find him to have forfeited these issues, Dominguez argues his attorney's failure to object to the assessments and fine, or request an ability to pay hearing, constituted ineffective assistance of counsel. He points out that *Dueñas* was decided more than a year before his sentencing hearing, and that six months before the hearing the California Supreme Court had granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47 (review granted Nov. 13, 2019, S257844) to decide whether a court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments and, if so, which party bears the burden of proof regarding defendant's inability to pay. Dominguez argues his attorney should have known the assessments and fine were subject to an ability to pay determination and, if counsel had objected, it is reasonably probable the trial court would have entertained an ability to pay hearing.

To prevail on this claim of ineffective assistance of counsel, Dominguez is required to show not only that counsel's performance was deficient, but also prejudice resulting from the deficiency. (*People v. Rices, supra,* 4 Cal.5th at p. 80.) Here, the prejudice requirement—demonstration of a reasonable probability the result of the proceeding would have been different—means Dominguez must show not just that the trial court would have entertained an ability to pay hearing, but that the court would have found Dominguez was unable to pay all or a portion of the assessments and fine ordered. Had Dominguez raised the issue, it would have been his burden to demonstrate he was not able to pay the assessments and fine. (*People v. Santos* (2019)

17

38 Cal.App.5th 923, 934; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490.)[6]

As we have said, a claim of ineffective assistance of counsel raised on direct appeal will succeed only if the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, counsel was asked for a reason and failed to provide one, or there could be no satisfactory explanation for counsel's failure. (*People v. Mai, supra*, 57 Cal.4th at p. 1009.) Here, the record contains no information relevant to Dominguez's ability to pay. We have no way of knowing what information defense counsel may have had about Dominguez's financial circumstances, such as work history, ability to earn, or family support. Knowledge that Dominguez had the ability to pay the amounts ordered, of course, would explain the failure to object. Further, " '[a]bility to pay does not necessarily require existing employment or cash on hand.' " (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837, quoting *People v. Staley* (1992) 10 Cal.App.4th 782, 785.) " '[T]he court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future.' " (*Hennessey,* at p. 1837, quoting *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487.) This may include a defendant's ability to earn prison wages and to earn money upon release from prison. (*Hennessey*, at p. 1837.) Counsel's failure to object or request an ability to pay hearing may have reflected an assessment that Dominguez would be able to make the required payments through prison wages during his years of incarceration, or through

---

[6] As earlier noted, the issue of which party bears the burden of proof of inability to pay is pending decision by the California Supreme Court in *People v. Kopp*, *supra*, S257844.

employment after his release.  Dominguez offers no basis for concluding he is *not* able to pay the assessments and fine ordered.

On this record, we cannot find counsel's failure to object to, or seek an ability to pay hearing regarding, the court operations and facilities assessments and minimum restitution fine constituted ineffective assistance of counsel.[7]

## III.

At the time Dominguez was sentenced, section 1170, subdivision (b), gave the trial courts broad discretion to decide which of the three terms specified for an offense would best serve the interests of justice.  (See § 1170, subd. (b), as amended by Stats. 2020, ch. 29, § 14.)  Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) amended section 1170, subdivision (b), in a number of respects, one of which was to make the middle term of imprisonment the presumptive sentence.  (§ 1170, subd. (b)(2); Stats. 2021, ch. 731, § 1.3.)  Under the amended statute, "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to

---

[7] Aside from relying upon forfeiture, the Attorney General accepts that due process requires an ability to pay hearing prior to imposition of the court operations and facilities assessments, which are not punitive (*People v. Alford* (2007) 42 Cal.4th 749, 756; *People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1112), but argues any error in failing to consider Dominguez's ability to pay was harmless in light of his ability to earn prison wages.  Regarding Dominguez's challenges to the $300 minimum restitution fine, the Attorney General maintains the fine is not constitutionally excessive given the seriousness of Dominguez's offenses and does not violate equal protection because it advances the state's legitimate interest in punishment.

Our conclusion that the record does not affirmatively demonstrate counsel could not have had a tactical purpose or satisfactory explanation for the failure to object or seek an ability to pay hearing makes it unnecessary for us to address the merits of these arguments.

exceed the middle term, except as otherwise provided in paragraph (2)."
(§ 1170, subd. (b)(1).) "A trial court may impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt. (§ 1170, subd. (b)(1)-(2).)" (*People v. Flores* (2022) 75 Cal.App.5th 495, 500.)

The parties agree that the Senate Bill No. 567 amendments apply retroactively to this case as "an ameliorative change in the law applicable to all nonfinal convictions on appeal. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.)" (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)[8] They disagree, however, as to whether Dominguez is entitled to any relief. Dominguez maintains the trial court's "sentencing choice" did not comply with the amended section 1170 because "no fact in aggravation was stipulated to by [Dominguez] nor found true beyond a reasonable doubt by a jury or the judge," and "[a]side from the plea agreement, there was no independent justification to impose the upper terms." In the Attorney General's view, the amendment to section 1170 does not apply because Dominguez specifically agreed to be sentenced to the aggravated term on count 1 as part of a negotiated plea agreement and the trial court imposed sentence in accordance with the agreement.

Contrary to Dominguez's dismissiveness regarding the significance of his plea agreement, the stipulated sentence is dispositive of his claim for

---

[8] " 'For the purpose of determining the retroactive application of an amendment to a criminal statute, the finality of a judgment is extended until the time has passed for petitioning for a writ of certiorari in the United States Supreme Court.' (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342, citing *People v. Vieira* (2005) 35 Cal.4th 264, 305–306.)" (*People v. Flores, supra,* 73 Cal.App.5th at p. 1039.)

relief under Senate Bill No. 567.  Because the plea agreement included a stipulated sentence, the trial court did not exercise any discretion in sentencing and could not have done so.  In these circumstances, there is no "sentencing choice" to be reconsidered under the new standards governing sentencing discretion.

" 'Although a plea agreement does not divest the court of its inherent sentencing discretion, "a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain.  [Citation.]  'A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound.'  [Citation.]  Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly.  [Citation.]  Once the court has accepted the terms of the negotiated plea, '[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree.'  [Citation.]" ' " (*People v. Blount* (2009) 175 Cal.App.4th 992, 997, quoting *People v. Segura* (2008) 44 Cal4th 921, 931.)

Several courts have considered a situation similar to that presented here in cases arising under section 1170.91, which mandates consideration of trauma resulting from military service as a mitigating factor when a court exercises determinate sentencing triad discretion.  (*People v. Pixley* (2022) 75 Cal.App.5th 1002; *People v. Brooks* (2020) 58 Cal.App.5th 1099; *People v. King* (2020) 52 Cal.App.5th 783.)  After section 1170.91 was amended to add a retroactivity clause and a procedure for resentencing individuals serving prison sentences for felony convictions who meet specified conditions, cases arose in which the petitioners seeking resentencing had originally been sentenced pursuant to plea agreements including stipulated sentences of a

21

fixed number of years. Relief was denied in this situation pursuant to the principles described above: Having accepted a plea agreement specifying a particular sentence, the trial court cannot impose a different sentence. (*Brooks*, at pp. 1108–1109, quoting *King*, at p. 791; *Pixley*, at pp. 1005–1006.) Furthermore, relief was unavailable because section 1170.91 is concerned with factors trial courts must consider " ' "when imposing a term under subdivision (b) of Section 1170," ' " which are not at issue with a stipulated sentence. (*Brooks*, at p. 1109, quoting *King*, at p. 791.) " 'A trial court that sentences under subdivision (b) of section 1170, exercises its discretion to choose an upper, middle or lower determinate term based on its consideration of factors in mitigation and aggravation. However, when a trial court sentences a defendant who has agreed to a stipulated sentence for a term of years, the trial court exercises no discretion to decide between an upper, middle and lower term and may not consider factors in mitigation and aggravation.' " (*Brooks*, at p. 1109, quoting *King*, at p. 791.)

In the present case, the prosecutor's recitation of the terms of the negotiated plea included that Dominguez would "plead either guilty or no contest to count 1 . . . first degree robbery or robbery of an inhabited dwelling. He will serve the upper term on that sentence of nine years." He would also plead guilty or no contest to counts 6 and 7, resisting an executive officer, and be sentenced to terms concurrent to count 1, and to a count of assault with force likely to cause great bodily injury, for which he would be sentenced to a consecutive one-year term. Dominguez responded "yes" when asked if this was his understanding. The felony advisement of rights, waiver, and plea form, which Dominguez acknowledged he read, discussed with his attorney, understood, and signed, specifically noted the sentence he was to receive as "UT 9 + 1 for 10y CDCR & one strike only." The probation report stated the

terms of the plea agreement included that Dominguez was to serve 10 years in prison, consisting of the upper term of nine years on count 1 and a consecutive one year on count 8, and was also to receive upper terms on counts 6 and 7 to be served concurrently. The sentencing recommendations followed the terms of the agreement without any analysis of aggravating and mitigating factors.

At sentencing, the trial court similarly conducted no analysis of aggravating and mitigating circumstances. The court stated, "The negotiated sentence was very straightforward in this case. The defendant pled as a negotiated sentence for the dismissal of numerous counts, as well as the People indicating they would drop the gang allegation in light of the developing evidence. So really the defendant has pled to several of the eight counts that were before the court and are as follows for a fixed term. The court believes the negotiated disposition was appropriate under the circumstances, especially in light of the posture of the case as this developed, the defendant's criminal history, as well as the facts of this particular case."

As Dominguez entered a plea agreement conditioned on a stipulated sentence including upper terms, and the trial court could not both accept the plea agreement and make a discretionary sentencing choice under section 1170, subdivision (b), Senate Bill No. 567's amendment of section 1170 is inapplicable to this case.

## DISPOSITION

The judgment is affirmed.

23

_____

Mayfield, J.*


We concur:


_____

Richman, Acting P.J.


_____

Miller, J.


*People v. Dominguez* (A164255)


    \* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


24